**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------

FRANK X. ACOCELLA,

        Plaintiff,

v.

BMW OF FREEPORT AND
AUTOMOTIVE MANAGEMENT SERVICES, INC.,
BMW FINANCIAL SERVICES NA, LLC

        Defendants.

---------------------------------------------------------------

**COMPLAINT**

**AND JURY DEMAND**

## INTRODUCTION

1. This is an action for rescission, actual damages, treble damages, punitive damages, declaratory judgment, attorney's fees and costs brought by consumer Frank X. Acocella, who paid over $57,219.84 for a leased 2016 BMW X6 that was represented by the Defendants as a new vehicle with no accident history when, in fact, Defendants knew full well that the car had suffered severe accident damage.

2. Specifically, as set forth below, the Defendants violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, New York General Business Law §§ 349, 350 and 396-p; as well as New York Uniform Commercial Code § 2-313 (breach of express warranty) and § 2-314 (breach of implied warranty of merchantability. Defendants are also liable to Plaintiff for Fraud and Rescission.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to 15 U.S.C. § 2310(d).

4.     With regard to 15 U.S.C. § 2310(d)(1)(B) and § 2310(d)(3), as set forth below, the amount in controversy with regard to "all claims to be determined in the suit" is over $50,000.

5.     The Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

6.     This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the events and omissions complained of took place in this District and Defendant maintains offices, transacts business, and is otherwise found in this district.

## THE PARTIES

8.     Plaintiff Frank X. Acocella is and at all relevant times has been a resident of Bedford Hills, New York.

9.     Defendant BMW of Freeport, ("BMW Freeport" or "the dealership") is a domestic business corporation under the laws of New York, whose principal place of business is located in Freeport, New York, in Nassau County.

10.    Defendant Automotive Management Services, Inc. ("AMSI") is a domestic business corporation under the laws of Florida whose principal place of business is located in West Palm Beach, Florida.

11.    Upon information and belief, AMSI is the owner and parent of BMW Freeport and exercises complete control over BMW Freeport's policies and procedures, responds to all significant customer disputes on behalf of BMW Freeport and, in particular, had final and complete authority with regard to BMW Freeport's response to Plaintiff's customer complaint.

12. Defendant BMW Financial Services NA, LLC ("BMW Financial") is a Delaware corporation with headquarters in Ohio.

13. BMW Financial is the assignee of the lease agreement by means of which the Vehicle was purchased by Plaintiff and, as such, is subject to all claims and defenses pursuant to federal and state laws.

**FACTS**

14. This dispute arises from the Dealership's lease of a 2016 BMW X6 xDrive 35i, VIN# 5UXKU2C51G0N80917 ("Vehicle") to Plaintiff on January 24, 2017.

15. The gross capitalized cost of the Vehicle (i.e. the agreed upon price of the vehicle leased by Mr. Acocella) was $57,219.84

16. The Vehicle was advertised and leased to Mr. Acocella as a "new" vehicle used only by the Dealership's manager, without accident damage or mechanical issues of any kind.

17. In addition, the Dealership salesperson explicitly stated to Mr. Acocella that the vehicle had not been in any accidents.

18. However, as became apparent during regular use and as was confirmed during servicing from an authorized BMW service center, the Vehicle has been in an undisclosed prior accident and was not in good working order when leased by the Dealership.

19. Mr. Acocella leased the vehicle based upon the Dealership's explicit representation that the Vehicle had never been in an accident.

20. As part and parcel of the Lease, Mr. Acocella traded in his wife's 2011 BMW X5 (which the family owned outright) for an agreed upon value of $14,402 and, in addition, paid $870.50 in cash.

21.     Soon after driving the Vehicle off the Dealership's lot, the Vehicle exhibited signs that it was in poor working order and had sustained prior damage.  At high speeds, the Vehicle produced significant vibration in the steering wheel.

22.     Further, the Vehicle's air conditioning system did not function and the Vehicle's Bluetooth system also intermittently malfunctioned.

23.     To address these service issues, Mr. Acocella brought the Vehicle in for servicing to BMW of Mount Kisco on or about May 10, 2017.

24.     Soon thereafter, Albert Pico (the regional manager and service advisor for BMW of Mount Kisco) told Mr. Acocella that the Vehicle had been in a collision and that there was evidence of accident damage, including repairs, body work (including panel replacement), and poor quality repainting.

25.     Moreover, it appears that the Vehicle's air conditioning system was caused by the aforementioned collision, which caused freon to leak out from the air-conditioning system.

26.     Following his receipt of information regarding the collision from BMW of Mount Kisco, Mr. Acocella contacted the Dealership.

27.     Mr. Acocella first communicated with the assistant manager, "Matt," who indicated that the Vehicle may have been used as a "loaner car."

28.     However, when Mr. Acocella inquired regarding the identity of the person who had driven the initial 4,639 miles on the Vehicle before the inception of the lease, no information was provided.

29.     Mr. Acocella subsequently spoke to Greg Vitello, who refused to acknowledge the prior accident or to take back the Vehicle.

30.     Mr. Acocella then retained an outside expert to examine the vehicle.

31. The expert, Phillip Grismer, concluded that the finish of the vehicle exhibited paint thickness measurements and numerous imperfections visible to an expert indicative of significant body work and repainting (imperfections including "sanding scratches, fish eye and dirt seeds under the paint color coat", "paint flash", and "rough finish").

32. Mr. Grismer concluded that the hood, front bumper, center grille support, both headlamp capsules and both front fenders have all been replaced and repainted, due to an accident.

33. Mr. Grismer further observed that the HVAC unit was inoperative, exhibited tool marks and paint overspray, and that, inter alia, various AC wires had been "cut off with an angled wire cutter or Dyke".

34. Upon information and belief, the disabling of the HVAC unit was an intentional act committed by the Dealership to avoid the expensive, equipment intensive procedure of meeting environmental protection requirements for refilling the Vehicle's freon supply.

35. It was the expert's opinion that the vehicle "was used as a demonstrator vehicle by the selling dealer and was damaged in an unreported collision prior to sale to the current owner. This vehicle would not pass in the trade without objection."

36. The expert further opined that at the time the vehicle was sold to Plaintiff, it's actual value was $28,609.92, *i.e.* 50% of the price paid by Plaintiff.

37. After unsuccessful attempts to resolve the dispute with Defendants and unwind the transaction, Plaintiff brings suit.

## COUNT I
## NYUCC § 2-313
### (Breach of Express Warranty)

38. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

39. BMW Freeport is a merchant and seller with respect to the Vehicle.

40. As set forth above, prior to and at the time of the sale of the Vehicle to Mr. Acocella for $57,219.84 for the purpose of inducing plaintiff to consummate the transaction, as part of the basis of the bargain, Defendants represented and expressly warranted to Mr. Acocella that the Vehicle was new and had no accident history.

41. Defendants breached said express warranties in that the Vehicle is in extremely poor condition, has significant accident history, and suffers from significant damage.

42. Defendants' misrepresentation of material fact was made in order to, and in fact did, induce Mr. Acocella to buy the Vehicle, under false pretenses.

43. Mr. Acocella, in agreeing to consummate the transaction, relied upon Defendants' express warranty as to the condition and history of the Vehicle.

44. Mr. Acocella would not have bought or been interested in buying the Vehicle at any price had he been aware that it was a used vehicle that had suffered a significant accident.

45. Upon learning of Defendants' breach of the express warranty, Mr. Acocella requested that the transaction be completely unwound and all funds returned to him.

46. Defendants refused.

47. As a direct result of Defendant's breach of express warranty, Mr. Acocella has suffered actual damages.

48. Plaintiff is entitled to and hereby elects cancellation and rescission of the loan in lieu of the actual damages attributable to the Vehicle's diminished value, but explicitly preserves his right to seek and hereby seeks all other money damages available under law.

49. As a direct result of Defendants' breach of express warranty, Mr. Acocella is entitled to actual damages, including consequential and incidental damages, and costs.

## COUNT II
## NYUCC § 2-314

### (Implied Warrant of Merchantability)

50. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

51. At all relevant times, BMW Freeport was a retail merchant with respect to the goods sold to Mr. Acocella.

52. In selling the Vehicle to Mr. Acocella, the Dealership warranted that the Vehicle was of a quality which would at least pass without objection in the trade, was of fair, average quality within the description, and was at least fit for ordinary purposes for which the Vehicle was sold.

53. In purchasing the Vehicle, Mr. Acocella relied upon said warranty of merchantability, as well as upon representations and statements constituting express warranties which were made by Defendants.

54. The Vehicle was not of merchantable quality and was not suitable for ordinary purposes.

55. Indeed, as detailed herein the Vehicle is a used vehicle with significant accident damage, not a new, accident-free vehicle.

56. Defendants breached the warranty of merchantability which had become part of the basis of the bargain between Mr. Acocella and Defendants.

57. The Vehicle cannot be put into merchantable quality.

58. As set forth above, Defendants have refused to accept the return of the Vehicle and have refused to refund to Mr. Acocella the purchase price or any other amount.

59. As a direct result of Defendants' breach of the implied warranty of merchantability, Mr. Acocella has suffered actual damages.

60. Plaintiff is entitled to and hereby elects cancellation and rescission of the loan in lieu of the actual damages attributable to the Vehicle's diminished value, but explicitly preserves his right to seek and hereby seeks all other money damages available under law.

## COUNT III
## MAGNUSSON MOSS WARRANTY ACT ("MMWA"), 15 U.S.C. §§ 2301, *et seq*.

61. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

62. Defendants, collectively, are a "supplier" and/or "warrantor" within the meaning of the MMWA, § 2301(4).

63. Plaintiff is a "consumer," as that term is defined under the MMWA, § 2301(3).

64. The Vehicle sold to Plaintiff is a "consumer product" within the meaning of the MMWA, § 2301(1).

65. There is no dispute resolution mechanism which applies to Plaintiff's warranty dispute.

66. In the alternative, Defendants have no dispute resolution mechanism which is enforceable under the MMWA and, also in the alternative, Plaintiff's good-faith attempts to resolve any dispute with Defendants, which was rebuffed, constitutes compliance with any reasonable dispute resolution requirement.

67. Defendants violated the MMWA and its implementing regulations by breaching the implied and express warranties, as set forth herein.

68. As a result of these violations, pursuant to MMWA § 2310(d), Mr. Acocella is entitled to actual damages, declaratory judgment that Defendants' practices violate the MMWA, and reasonable attorney's fees, costs and expenses.

69. Plaintiff is entitled to and hereby elects cancellation and rescission of the loan in lieu of the actual damages attributable to the Vehicle's diminished value, but explicitly preserves his right to seek and hereby seeks all other money damages available under law, including but not limited to consequential and punitive damages.

8

## COUNT IV
## FRAUD

70. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs.

71. As set forth above, Defendants made representations as to material facts regarding the Vehicle.

72. Specifically, Defendants represented that the Vehicle was new and did not have any accident history.

73. As set forth in detail herein, these representations were all false.

74. Defendants intended to deceive Mr. Acocella and were aware at all relevant times that the Vehicle had been a significant accident and was a used, damaged vehicle.

75. Mr. Acocella believed and justifiably relied upon Defendants' representations and was induced by them to purchase the Vehicle.

76. Had Defendants been truthful and not made these fraudulent misrepresentations, Mr. Acocella would not have purchased the Vehicle at any price.

77. As a result of such reliance, Mr. Acocella sustained actual damages.

78. Moreover, Defendants' conduct was egregious, involving intentional and repeated misconduct.

79. As a result of Plaintiff's reasonable reliance upon Defendants' misrepresentations, Plaintiff is entitled to actual damages, punitive damages, attorney's fees, and costs.

## COUNT V
## NYGBL § 349 (Deceptive Acts and Practices Unlawful)

80. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

81.     Each of the deceptive acts and practices set forth above constitutes a violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

82.     These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

83.     Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

84.     Defendants' conduct and statements were materially misleading.

85.     As a result of these violations of NYGBL §349, Plaintiff suffered actual damages.

86.     Defendants' violations were willful and knowing and committed in bad faith.

87.     For these reasons, Plaintiff is entitled to actual damages, three times the actual damages up to $1000, punitive damages, attorney's fees, costs and declaratory judgment that Defendants' practices are deceptive in violation of § 349, and injunctive relief.

## COUNT VI
## NYGBL § 350 (Unlawful False Advertising)

88.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

89.     Under NYGBL § 350, "false advertising" means "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such

representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

90. Defendants' oral and written misstatements and omissions regarding the history and condition of the Vehicle constitute false advertising pursuant to NYGBL § 350.

91. Defendants' false advertising was done knowingly and willfully and committed in bad faith.

92. As a result of these violations of NYGBL §350, Plaintiff -- who would not have purchased the Vehicle at any price but for Defendant's false advertising -- suffered actual damages.

93. For these reasons, Plaintiff is entitled to injunctive relief (enjoining the false advertising practices described above), actual damages, three times the actual damages up to $10,000, punitive damages, reasonable attorney's fees, costs and declaratory and injunctive relief.

### COUNT VII
### NYGBL § 396–p

94. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

95. The physical damage to the vehicle described above decreased the value of the vehicle by at least 50%.

96. As such, pursuant to GBL § 396-p, the Dealership was required to provide written notification to Plaintiff of all repairs to the vehicle.

97. The Dealership failed to provide this written notification.

98. Plaintiff is therefore entitled to a full refund of the purchase price and trade-in allowance plus all fees and charges.

## COUNT VIII
## RESCISSION

99.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

100.    The Dealership misrepresented numerous material facts as part of its sale of the Vehicle to Plaintiff.

101.    Specifically, as previously alleged, the Dealership represented the Vehicle as new, not used, and represented that the vehicle was accident free.

102.    Plaintiff justifiably relied upon these material misrepresentations and would never have purchased the Vehicle but for BMW Freeport's deception.

103.    BMW Freeport's breach was material and willful.

104.    The Dealership's breach is also so substantial and fundamental that it strongly tends to defeat the purpose of the contract.

105.    Damages will not afford Plaintiff a complete and adequate remedy and the status quo may be substantially restored by equitable relief.

106.    Plaintiff is entitled to and hereby rescinds his contract to purchase the Vehicle and all related contracts and services.

107.    As a result of these violations, Plaintiff is entitled to rescission of the lease agreement, restitution of all monies paid thereunder, and costs and expenses.

    WHEREFORE, Plaintiff respectfully demands judgment against Defendant as follows:

    a.  On COUNT I, NYUCC § 2-313 (Breach of Express Warranty), judgment against Defendant, actual damages, and costs;

    b.  On COUNT II, NYUCC § 2-314 (Breach of Implied Warranty of Merchantability), judgment against Defendant, actual damages, and costs;

    c. On COUNT III, MAGNUSON MOSS WARRANTY ACT ("MMWA"), judgment against Defendant, actual damages, reasonable attorney's fees, costs and expenses, and declaratory judgment that Defendant has violated the MMWA;

    d. On COUNT IV, FRAUD, judgment against Defendant, actual damages, punitive damages, costs and reasonable attorney's fees;

    e. On COUNT V, NYGBL § 349, judgment against Defendant, injunctive relief, actual damages, three times the actual damages up to $1,000, punitive damages, costs and reasonable attorney's fees, declaratory judgment that Defendant has engaged in deceptive conduct and injunctive relief;

    f. On COUNT VI, NYGBL § 350, judgment against Defendant, injunctive relief, actual damages, three times the actual damages up to $10,000, punitive damages, costs and reasonable attorney's fees pursuant to NYGBL § 350(e), declaratory judgment that Defendant has engaged in false advertising and injunctive relief;

    g. On COUNT VII, NYGBL § 396-p, full refund of the purchase price and trade-in allowance plus all fees and charges;

    h. On COUNT VIII, RESCISSION, rescission of the lease agreement, restitution of all monies paid thereunder, and costs and expenses; and

    i. all such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: September 25, 2017
       New York, New York

                        Respectfully Submitted,

                        */s/Daniel A. Schlanger*
                        Daniel A. Schlanger
                        Kakalec & Schlanger, LLP
                        85 Broad Street, 18th Floor
                        New York, NY 10004
                        T: 212.500.6114
                        dschlanger@kakalec-schlanger.com